**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

KTK MINING OF VIRGINIA, LLC, et al.     :

    Plaintiffs,                                     :

v.                                                            :          CA 2:12-00655-KD-C

CITY OF SELMA, ALABAMA and           :
WILLIAM T. RILEY, in his official capacity
as its Chief of Police,                                :

    Defendants.                                    :

**REPORT AND RECOMMENDATION**

After seeking leave to amend (Doc. 21), which the Court granted after no opposition was filed (Doc. 23), the plaintiffs filed the amended complaint (Doc. 28) on March 19, 2013.  One week later, on March 26, 2013, the defendants—who failed to launch a pre-answer challenge to the original complaint—filed the pending motion to dismiss that complaint (Doc. 29; *see also* Doc. 30 (brief)).  The motion has been responded to (Doc. 32), the defendants have filed a reply in support (Doc. 33), and the matter is now before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) for entry of a report and recommendation.[1]  For the reasons explained below, it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.  Specifically, the undersigned finds:

    1.    Plaintiff Todd Kiscaden lacks standing and, as such, any claims he asserts should be **DISMISSED WITH PREJUDICE**;

---

[1]     On April 23, 2012, after briefing with respect to the motion to dismiss had closed, the plaintiffs attempted to file a motion to dismiss Defendant William T. Riley in conjunction with a request for leave to file a second amended complaint (Doc. 34).   Judge DuBose denied their attempt to amend as untimely (Doc. 36).

2.      All claims against Defendant William T. Riley should be **DISMISSED WITH PREJUDICE**;

3.      As to Count I, the Fifth Amendment claim and the Fourteenth Amendment Substantive Due Process claim should be **DISMISSED WITH PREJUDICE**;

4.      Counts II and III, for tortious interference, should be **DISMISSED WITH PREJUDICE** in their entirety;

5.      As to Count IV, for conversion, any claim that real property was converted should be **DISMISSED WITH PREJUDICE**;

6.      Count V, for negligence and wantonness, should be **DISMISSED WITH PREJUDICE** in its entirety;

7.      Count VI, for fraud, should be **DISMISSED WITH PREJUDICE** in its entirety; and

8.      As to Count VII, for injunctive relief, any request for a preliminary injunction should be **DENIED** (that aspect of the count should be **DISMISSED WITH PREJUDICE**).

In all other respects, the motion should be **DENIED**.

## I.      Background and Standing

Taking the facts as plead in the operative complaint as true, as the Court must for purposes of the pending motion, *see, e.g., United States v. Gaubert*, 499 U.S. 315, 327 (1991),[2] this lawsuit concerns work KTK of Virginia Mining, LLC began performing to improve a memorial in Old Live Oak Cemetery in Selma, which the City halted in response to protest.   KTK alleges, further, that by illegally revoking its building permit, the City violated KTK's rights protected by the First, Fifth, and Fourteenth Amendments and committed violations of Alabama law.

---

[2]      "On a motion to dismiss, the court must accept the facts alleged in the complaint as true.   However, a complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face."   *Robinson v. Correctional Med. Assocs., Inc.*, Civil Action No. 1:09–cv–01509–JOF, 2010 WL 2499994, at *2 (N.D. Ga. June 15, 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–62, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

A.     Todd Kiscaden.

Plaintiff Todd Kiscaden is identified in the amended complaint as "the sole member, manager, and owner of KTK," a Virginia LLC.  (Doc. 28, ¶ 1.)   Although identified in the operative complaint, no factual allegations therein concern Kiscaden, which makes sense because, as the plaintiffs concede in response to the motion to dismiss, "legal title to the contract and building permit [was] at all times [ ] vested in KTK[.]"   (Doc. 32 at 16.)   Kiscaden argues, however, that, "as sole owner of KTK, [he] had an equitable interest in [KTK's] asserts and he clearly has a right to use those assets, and KTK, in furtherance of his political speech."   (*Id.*)   But this argument completely misses the mark.   Coopting a recent pronouncement by the Fourth Circuit, Kiscaden has

> failed to account for the fact that [he] elected to conduct [his] business through a limited liability company ("LLC") and that, just as [he] received protection of [his] personal assets from liability in doing so, [he] also assumed a role as agent[] for the company.  At bottom, [he] gave up standing to claim damages to the LLC, even if [he] also suffered personal damages as a consequence.

*Painter's Mill Grille, LLC v. Brown*, --- F.3d ----, 2013 WL 2284874, at *3 (4th Cir. May 24, 2013) (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006)).   Accordingly, it is **RECOMMENDED** that any claims asserted by Todd Kicaden be **DISMISSED WITH PREJUDICE**.

B.     Factual Allegations.

On August 2, 2012, the plaintiff, KTK, and the Selma Chapter 53, United Daughters of the Confederacy (the "UDC") entered a contract "to perform construction work having a value when completed of $163,200, to make improvements to the

Confederate Memorial Circle in Old Live Oak Cemetery, [in] Selma (the "Circle").[3] (Doc. 28, ¶ 6.)

> KTK agreed to perform this work on a non-profit basis and without any personal responsibility of Selma Chapter 53, UDC, to pay the expenses or costs of the project either individually or collectively, with all such costs and expenses being contributed by KTK on a nonprofit basis, or being reimbursed by private contributions. KTK's contribution to the project was political speech in support of the preservation of historical memorials celebrating and depicting the Confederate role in the Civil War.

(*Id.*)  On August 6, 2012, KTK entered a similar contract with the Friends of Forrest, Inc. (a group holding a license for the Nathan Bedford Forrest Monument portion of the Circle) ("Friends") to make improvements to the Circle "and to secure the Nathan Bedford Forrest Monument to be located on the north side of the C.S.A. Monument in the [Circle]."  (*Id.*, ¶ 7.)

The UDC and Friends obtained a Certificate of Appropriateness from the Selma Historic Development Commission on August 3, 2012 for the "Rebuilding of the Gen. N.B. Forrest Monument, beautification and enhancement of the [Circle] in Old Live Oak Cemetery."  (*Id.*, ¶¶ 8, 9.)   On the same day, KTK obtained a building permit from the City of Selma, Department of the Building Inspector.   (*Id.*, ¶ 10.)   And during August 2012, KTK began work pursuant to its contracts with the UDC and Friends, expending approximately $90,000, before the work was stopped on August 28, 2012.   (*Id.*, ¶ 11.)

On or about August 23, 2012, protestors entered KTK's work area and attempted to block KTK from completing the construction work.   (*Id.*, ¶ 12.)   When KTK

---

[3]    According to the complaint, the land comprising the cemetery was conveyed to the City of Selma in April 1877, the single acre comprising the Circle was granted or licensed to UDC's predecessor, the Confederate Memorial Association later that same month, and UDC assumed responsibilities for the Circle in 1896.   (Doc. 28 at 3 n.1, 2.)

employees returned to the work on August 28, 2012 they "were confronted by [Selma Police] Chief [William T.] Riley who told the KTK employees that they would be arrested if any work continued."   (*Id.*, ¶ 13.)   The employees complied with Chief Riley's directive and have not returned to the work site.   (*Id.*, ¶¶ 14, 16.)

KTK further provides that the Selma City Council did not vote to "suspend" the building permit until September 25, 2012, and it did so, "KTK understands[,]" at the behest of protestors—"to allow a court to determine the ownership of the [Circle], with the protestors claiming that the City of Selma had never deeded that parcel to UDC or its predecessor in interest"—and without notice to KTK or the involvement of the Building Inspector.   (*Id.*, ¶¶ 15, 17, 19, 20, 21.)   KTK contends that, the City has yet "to file any legal action seeking any determination as to any issue from any court," presumably including ownership of the Circle; thus, the suspension of the building permit is tantamount to its revocation (*see id.*, ¶ 21), which has

deprived KTK of its property rights guaranteed by the Fifth Amendment of the United States Constitution and of its right to due process of law guaranteed by the Fourteenth Amendment of the United States Constitution.   [The City's] actions have also abridged KTK's right to freedom of speech and expression as guaranteed by the First Amendment to the United States Constitution.

[Further, t]he actions of Chief Riley and the City Council acting on behalf of the City of Selma have: deprived KTK from its right to perform its construction contracts; caused KTK to lose the benefit of the funds expended by it to be able to perform, and to perform, its construction contracts including salaries and wages paid to KTK employees, travel and lodging expenses of KTK employees, funds expended for construction materials; caused KTK to incur attorney's fees and legal expenses to seek legal redress of these wrongful actions of Chief Riley and the City of Selma and to incur other expenses associated with its performance of its contracts, all without due process of law.   These actions have also deprived KTK of contract and property rights without just compensation and deprived KTK of its right to improve and beautify a memorial

5

devoted to American Civil War dead, thereby abridging KTK's rights under the Fifth and First Amendments to the United States Constitution without due process of law guaranteed by the Fourteenth Amendment to the United States Constitution.   The actions of the City and Chief Riley were done and performed in bad faith, maliciously, contrary to established law and for an improper purpose in order to deprive plaintiffs of their constitutional rights.

(*Id.*, ¶¶ 22, 23.)

## II.   <u>Analysis</u>

### A.   Preliminary Considerations.

This analysis begins with determining which counts have been conceded or abandoned by KTK.

### 1.   All claims against Chief Riley are due to be dismissed.

By moving to dismiss him in its attempt to further amend the operative complaint, KTK has conceded that Chief Riley is not a proper defendant.   (*Compare* Doc. 34 at 1 ("mov[ing] this Court . . . [t]o dismiss William T. Riley in his official capacity as the Chief of Police of the City of Selma[—his only named capacity—]as a party defendant in this action . . ."), *with* Doc. 36 (order ***solely*** denying attempt to amend, as untimely).)   And even without this concession, dismissal of the official capacity claims against Chief Riley would be required because "[w]hen a city officer is sued under § 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'"   *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1338 (M.D. Ala. 2007) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))

'Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents.' *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).   Consequently, the § 1983 official-capacity claims against [Chief Riley], in effect, merge into the §

6

> 1983 claim[s] against the City of [Selma] and no longer exist.    The § 1983
> official-capacity claims against [Riley], therefore, are due to be dismissed."

*Id.* at 1338-39.   This logic also applies to KTK's claims for tortious interference and conversion against Chief Riley in his official capacity.   *See, e.g., Whaumbush v. City of Philadelphia*, 747 F. Supp. 2d 505, 510 & n.2 (E.D. Pa. 2010) (a claim for tortious interference against city officials in their official capacity is duplicative of the plaintiffs' claims against the City) (citing, *inter alia*, *Graham*, 473 U.S. at 165).

2.     **KTK concedes that it cannot state a Fifth Amendment claim against the City, and as such, that aspect of Count I should be dismissed.[4]**

3.     **KTK also concedes that its separate claims for tortious interference (Counts II and III) are due to be dismissed.[5]**

4.     **KTK next concedes that any claim for wantonness (contained in Count IV) is due to be dismissed.[6]**

5.     **KTK has abandoned Count VI and, as such, that count should also be dismissed.[7]**

Therefore, after sifting through the parties' briefing, it appears that what is left for determination is whether the following claims—all asserted solely against the City of Selma—should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim

---

[4]     *See, e.g.*, Doc. 32 at 1-2 n.1 ("Plaintiffs' agree [sic] [that] their due process claims, which originated in the Fifth Amendment and were subsequently incorporated by the Fourteenth are, in the final analysis, Fourteenth Amendment claims. . . .").

[5]     *See, e.g., id.* at 11 ("Plaintiffs' tortious interference with contract claims, [Counts] 2 and 3 above, are subsumed in Plaintiffs' Fourteenth Amendment claims, and withdrawn as separate state law based claims.").

[6]     *See, e.g., id.* ("Plaintiffs agree their wanton claims should be dismissed.").

[7]     Although a Count VI (a claim for fraud) appears in KTK's amended complaint (*see* Doc. 28 at 11), the five numbered paragraphs in that count all simply state "(DELETED)." Accordingly, the undersigned agrees with the defendants (*see* Doc. 30 at 15) that KTK has abandoned this cause of action, and Count VI should be dismissed.

7

upon which relief may be granted: Count I (for violation of the First and Fourteenth Amendments); Count IV (for conversion under Alabama law); Count V (for negligence under Alabama law); Count VII (for injunctive relief); and Count VIII (an "appeal" from the "suspension/revocation on September 25, 2012, of the building permit issued on August 3, 2012 . . .").

**B.     Legal Standard.**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted.   Such a motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true, *see, e.g., Gaubert*, 499 U.S. at 327; *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990), and all factual allegations, moreover, are to be construed in the light most favorable to the plaintiff, *see, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989); *see also Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (same).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'   As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me  accusation.").   Indeed, "[a] pleading that offers

8

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Id.* (quoting *Twombly*, 550 U.S. at 557).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.   Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.*
>
> Two working principles underlie our decision in *Twombly*.   First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.   Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.   Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  *But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.*

*Id.* at 678-79 (emphasis added and internal citations and quotation marks omitted); *see also id.* at 680 (a plaintiff must nudge his claims "across the line from conceivable to plausible."); *compare Speaker*, 623 F.3d at 1381 ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion.   Rather, his allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'"), *with Robinson v.*

9

*Correctional Med. Assocs., Inc.*, Civil Action No. 1:09–cv–01509–JOF, 2010 WL 2499994, at *2 (N.D. Ga. June 15, 2010) ("Factual allegations in a complaint need not be detailed but 'must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'") (quoting *Twombly*, 550 U.S. at 555 (internal citations and emphasis omitted)).

In addition, this case concerns, to some degree, "[l]and-use litigation[, which] is a complex area of law, to say the least." *Romero v. Watson*, No. 1:08 CV 217-SPM-AK, 2009 WL 1361714, at *2 (N.D. Fla. May 13, 2009) (quoting *Watson Constr. Co. v. City of Gainesville*, 433 F. Supp. 2d 1269, 1274 (N.D. Fla. 2006)).

> Both litigants and courts can be confused by the complexity, and "often one cannot tell which claim has been brought or which standard is being applied." *Eide v. Sarasota County*, 908 F.2d 716, 722 (11th Cir. 1990). The United States Supreme Court has refined its understanding of these concepts over the years, sometimes overturning or modifying previous decisions or portions of them. *See Watson*, 433 F. Supp. 2d at 1274 (describing refinements in land-use litigation). The Eleventh Circuit has recognized the ensuing confusion and has attempted to clarify this area of the law on several occasions. *See Greenbriar Village, LLC v. Mountain Brook*, 345 F. 3d 1258 (11th Cir. 2003); *Villas of Lake Jackson, Ltd. v. Leon County*, 121 F.3d 610 (11th Cir. 1997); *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994); *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990). The resulting legal framework is difficult to interpret and this case illustrates that "confusion abounds." *Watson*, 433 F. Supp. 2d at 1274. In some cases, the abounding legal confusion has led to the dreaded "shotgun" pleading, in which plaintiffs add to the problem by alleging a myriad of facts under an undecipherable legal theory. *See Boatman v. Town of Oakland, Fla.*, 76 F.3d 341, 344 n.6 (11th Cir. 1996) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)). In an attempt to cut through the confusion, the court must examine each cause of action "for what it actually is, not for what [the plaintiff] would have it be" when determining the type of claim. *McKinney*, 20 F.3d at 1560.
>
> While this task can be difficult, the goal is simple: to limit the role of the federal court in land-use litigation. "Federal courts do not sit as zoning boards of appeals." *Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1558 (11th Cir. 1991) (citing *Spence v. Zimmerman*, 873 F.2d 256, 262 (11th Cir. 1989)).

In addition, "[f]ederal courts must not usurp the roles of agencies, review boards, and state courts in reviewing the wisdom of executive actions." *DeKalb Stone, Inc. v. County of DeKalb, Ga.*, 106 F.3d 956, 960 (11th Cir. 1997). There is an important reason for this policy: a state should have the first chance to correct the mistakes it makes when reasonably regulating the land within its borders. *See Eide*, 908 F.2d at 726 ("zoning is a delicate area where a county's power should not be usurped without giving the county an opportunity to consider concrete facts and the merits prior to a court suit.").

*Id.*

### C.     First Amendment Violation (Count I).

KTK contends that the City's actions with regard to the building permit "have [ ] abridged [its] right to freedom of speech and expression as guaranteed by the First Amendment to the United States Constitution." (Doc. 28, ¶ 22.) The City contends that, even accepting that political speech is at issue in this case, a claim for violation of the First Amendment is not plausible and, in fact, is foreclosed by the United States Supreme Court's decision in *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009), which

> present[ed] the question whether the Free Speech Clause of the First Amendment entitles a private group to insist that a municipality permit it to place a permanent monument in a city park in which other donated monuments were previously erected. The Court of Appeals held that the municipality was required to accept the monument because a public park is a traditional public forum. We conclude, however, that although a park is a traditional public forum for speeches and other transitory expressive acts, the display of a permanent monument in a public park is not a form of expression to which forum analysis applies. Instead, the placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the Free Speech Clause.

*Id.* at 464. And there the Court concluded, quite practically, that traditional public forum principles are generally out of place in the context of adding permanent monuments to public spaces:

11

The obvious truth of the matter is that if public parks were considered to be traditional public forums for the purpose of erecting privately donated monuments, most parks would have little choice but to refuse all such donations.   And where the application of forum analysis would lead almost inexorably to closing of the forum, it is obvious that forum analysis is out of place.

.                    .                  .

To be sure, [however,] there are limited circumstances in which the forum doctrine might properly be applied to a permanent monument—for example, if a town created a monument on which all of its residents (or all those meeting some other criterion) could place the name of a person to be honored or some other private message.   But as a general matter, forum analysis simply does not apply to the installation of permanent monuments on public property.

*Id.* at 480.

The City may ultimately prevail on its theory that the suspension/revocation of KTK's building permit was government speech meant to halt the proliferation of permanent monuments on public property, but, accepting the well-plead allegations of the operative complaint as true, there is currently enough to distinguish this case from *Summum* to prevent granting the City's request to dismiss this claim as implausible.

First, KTK has alleged that it undertook its work on behalf of an organization, the UDC, that "is and has been since approximately 1896 the licensee of [the] City of Selma as licensor of the Confederate Memorial Circle[,]" a parcel of land set aside by the City of Selma in 1877 "for the purpose of honoring Confederate dead."   (Doc. 28 at 3 n.1, 6 n.4.)   While KTK's work, if allowed to continue, could substantially alter an existing monument, unlike in *Summum*, no new monument will be added to a public space. Thus, it is unclear that forum analysis should not be applied to this case since its application in a case involving changes to a monument that has been in place for generations would not necessarily lead "to closing of the forum."   *See Summum*, 555

12

U.S. at 480 ("[A]s a general matter, forum analysis simply does not apply to the *installation* of permanent monuments on public property.") (emphasis added).

Next, if public forum analysis is applied, whether the Circle (and possibly Old Live Oak Cemetery generally) can be considered a public forum is inherently factual. For example, while the Eleventh Circuit has, without much analysis, "reject[ed an] argument that cemeteries are public fora," noting that it was "aware of no federal court that has concluded otherwise," *Warner v. City of Boca Raton*, 420 F.3d 1308, 1310 n.1 (11th Cir. 2005) (per curiam),[8] should an exception exists given the history of Old Live Oak Cemetery and, if not for the cemetery generally, for the Circle within it?   The answers, it seems, turn on facts the parties have not yet presented to this Court.   And, assuming some sort of public forum exists,

> [w]hile government speech is not restricted by the Free Speech Clause, the government does not have a free hand to regulate private speech on government property.   This Court long ago recognized that members of the public retain strong free speech rights when they venture into public streets and parks, "which 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'"   *Perry Ed. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (quoting *Hague v. Committee for Indus. Org.*, 307 U.S. 496, 515 (1939) (opinion of Owens Roberts, J.)).   In order to preserve this freedom, government entities are strictly limited in their ability to regulate private speech in such "traditional public fora."   *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 800 (1985).   Reasonable time, place, and manner restrictions are allowed, *see Perry Ed. Ass'n*, 460 U.S. at 45, but any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a

---

[8]      *See also Warren v. Fairfax County*, 196 F.3d 186, 201-02 (4th Cir. 1999) (noting that "a public square or commons is surely a traditional public forum, whereas a zoological park, a public cemetery, or even a public university is not") (citing 32 C.F.R. § 553.22(f), (g) (restricting picketing, orations, displaying of placards, distribution of handbills, solicitation, and other forms of speech in the Arlington National Cemetery out of respect for the "honored dead"); *Widmar v. Vincent*, 454 U.S. 263, 267-68 n.5 (1981)).

> compelling government interest, *see Cornelius*, 473 U.S. at 800, and restrictions based on viewpoint are prohibited, *see Carey v. Brown*, 447 U.S. 455, 463 (1980).
>
> With the concept of the traditional public forum as a starting point, this Court has recognized that members of the public have free speech rights on other types of government property and in certain other government programs that share essential attributes of a traditional public forum.   We have held that a government entity may create "a designated public forum" if government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose.   *See Cornelius*, 473 U.S., at 802.   Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum.   *Id.* at 800.

*Summum*, 555 U.S. at 469-70 (internal citations modified).

> A court applying the tenets of [forum analysis] cases to a motion under Rule 12(b)(6) "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *accord Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).   Moreover, where government action is challenged on First Amendment grounds, a court should be especially "unwilling to decide the legal questions posed by the parties without a more thoroughly developed record of proceedings in which the parties have an opportunity to prove those disputed factual assertions upon which they rely." *City of Los Angeles v. Preferred Communications*, 476 U.S. 488, 494 (1986).

*American Fed. of State, County & Municipal Employees, AFL-CIO, Local 3190 v. Maricopa County Bd. of Supervisors*, No. CV 06–2128–PHX–SMM, 2007 WL 809948, at *3 (D. Ariz. Mar. 15, 2007) (some internal citations altered); *accord Potenza v. Molinaro*, No. 03 CV 5534 CB A, 2006 WL 898026, at *1 (E.D.N.Y. Mar. 31, 2006) ("[T]he question of whether the SICTV production facilities constitute a public or nonpublic forum raises questions of fact that may not be decided upon a motion to dismiss pursuant to Rule 12(b)(6). Although the Court may later find that this question could appropriately be decided upon a motion for summary judgment, the Court cannot at this early stage of the litigation conclude that it is "beyond doubt that the plaintiff [could] prove no set of facts

in support of his claim which would entitle him to relief.") (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); citing *Stewart v. D.C. Armory Bd.*, 863 F.2d 1013, 1018-19 (D.C. Cir. 1988) (reversing dismissal of First Amendment claims because determining whether the government intended to create a public forum is "inherently factual" and cannot be decided on a motion to dismiss).

Accordingly, because the undersigned cannot at this initial stage of the proceedings determine that there is no doubt that KTK could prove no set of facts in support of its claim for deprivation of its First Amendment rights which would entitle it to relief on that claim, it is **RECOMMENED** that the Court **DENY** the City's motion with respect to the First Amendment claim contained in Count I.

### D.   Fourteenth Amendment—Substantive Due Process Violation (Count I).

KTK's next alleged constitutional violation is that the suspension/revocation of the building permit violated its Fourteenth Amendment substantive due process rights. And the problem with this claim is glaring:

> "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc). Fundamental rights are those rights created by the Constitution. *DeKalb Stone, Inc. v. County of DeKalb, Ga.*, 106 F.3d 956, 959 n.6 (11th Cir. 1997) (per curiam). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002). Thus, to the extent that [KTK] predicates its substantive due process claim directly on the denial of its state-granted and-defined property right in the permit, no substantive due process claim is viable. *See McKinney*, 20 F.3d at 1560; *Morley's Auto Body, Inc. v. Hunter*, 70 F.3d 1209, 1217 n.5 (11th 1995).

15

*Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003) (per curiam) (internal citation modified and footnote omitted); *see also Ingles v. Lake County, Fla.*, No. 504CV465OC10GRJ, 2005 WL 3448026, at *3-4 (M.D. Fla. Dec. 15, 2005) ("[S]ubstantive rights created only by state law are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution.   As a result, state law based rights may be rescinded so long as the elements of procedural—not substantive—due process are observed.   [Therefore, t]he denial of the Plaintiff's application for an occupational license, which would have allowed the Plaintiff to operate a retail music store in a building which he leased, is a state law based right which does not implicate any fundamental right the Plaintiff may have under the Constitution.   Even if the Defendants acted arbitrarily and capriciously in denying the Plaintiff's occupational license application, constitutional due process is satisfied if the Defendants employed proper procedures.") (footnote citations omitted); *Romero*, 2009 WL 1361714, at *4 ("[A] state-created property right is protected by procedural due process.   Fundamental rights are protected by substantive due process, but the right to use real property for a specific purpose is not a fundamental right.") (citing *Collins & Co. v. City of Jacksonville*, 38 F. Supp. 2d 1338, 1342 (M.D. Fla. 1998) (granting the defendant's motion to dismiss because the right to "own, alienate, or otherwise use real property" does not fall within the set of fundamental rights protected by substantive due process under current Supreme Court jurisprudence); *Reserve, Ltd. v. Town of Longboat Key*, 933 F. Supp. 1040, 1043-44 (M.D. Fla. 1996) (holding that the plaintiff's interest in a revoked building permit "falls comfortably short of a fundamental right")).

16

Accordingly, the undersigned **RECOMMENDS** that the Court **GRANT** the City's request to **DISMISS** the Fourteenth Amendment Substantive Due Process claim contained in Count I.

### E. Fourteenth Amendment—Procedural Due Process Violation (Count I) and Appeal of City Council's Decision (Count VIII).

Proper procedures may be what this case is all about.   As such, the undersigned will consider KTK's procedural due process claim in conjunction with its related requests that the Court review the Selma City Council's decision to suspend/revoke KTK's building permit.

"'Due process' cases typically focus on whether governments can take away property without affording its owner an adequate notice and opportunity to be heard." *Greenbriar Vill.*, 345 F.3d at 1264 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-16 (1950)).   And "[a] claim for procedural due process has three elements: '(1) whether there is enough of a property interest at stake to be deemed "protectable"; (2) the amount of process that should be due for that protectable right; and (3) the process actually provided, be it before or after the deprivation.'"   *Toodle v. Allen*, No. 2:09–CV–150–WKW, 2010 WL 2609116, at *3 (M.D. Ala. June 28, 2010) (quoting *Greenbriar Vill.*, 345 F.3d at 1264).

Accordingly, "a procedural due process violation is not complete 'unless and until the State fails to provide due process.'   In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."   *McKinney*, 20 F.3d at

1557 (quoting *Zinermon v. Burch*, 494 U.S. 113, 123 (1990)); *compare id., with Romero*, 2009 WL 1361714, at *3 ("In many cases, if the state provides an adequate post-deprivation procedure, then the state has fulfilled its obligation to provide procedural due process when depriving the plaintiff of a state-created right.   In such a case, the court's only consideration is whether adequate remedies were available under state law, not whether the plaintiff took advantage of them.") (citations omitted).[9]

For a state remedy to be adequate it "need not provide all relief available under section 1983; as long as the remedy 'could have fully compensated [KTK] for the property loss [it] suffered,' the remedy satisfies procedural due process."   *McKinney*, 20 F.3d at 1564 (quoting *Parratt v. Taylor*, 451 U.S. 527, 544 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)); *see also id.* (finding, "The Florida courts possess the power to remedy McKinney's loss both in terms of damages and

---

[9]       For example, as stated in *Ingles*,

even if the Plaintiff suffered a procedural deprivation because the hearings provided by the Defendants were flawed in some way, the Plaintiff cannot make out a procedural due process violation unless the State of Florida refused to make available a means to remedy the deprivation.   Since Florida courts have the authority to remedy the deficiencies the Plaintiff complains of, and since the Plaintiff has made no allegations in his Complaint that Florida courts have refused to remedy the alleged deprivation he suffered, the Plaintiff's procedural due process claim is also due to be dismissed.

2005 WL 3448026, at *4 (citing *McKinney*, 20 F.3d at 1561-63; *see also Wynn ex rel. Wynn v. City of Talladega Bd. of Educ.*, No. 1:12–CV–742–VEH, 2012 WL 4813630, at *6 (N.D. Ala. Oct. 9, 2012) ("Although a predeprivation hearing is preferred, the Supreme Court and the Eleventh Circuit both recognize predeprivation process is sometimes impractical or impossible.   In such instances, the availability of an adequate postdeprivation remedy will satisfy the requirements of the Procedural Due Process Clause.   [If] the postdeprivation remedy affords a plaintiff constitutionally adequate process, the deprivation does not amount to a violation of the Procedural Due Process Clause.") (citing *McKinney*, 20 F.3d at 1562-63; *Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996)).

equitable relief; as such, the Florida procedures satisfy procedural due process and alleviate any deprivation McKinney may have suffered at the hands of the Board.")

In *O'Neal Homes, Inc. v. City of Orange Beach*, 333 Fed. App'x 428 (11th Cir. May 29, 2009) (per curiam)—another building permit revocation case originating in this District—the plaintiffs "argue[d] they had a property interest in the building permits issued by the city, and that the [this Court] erred in granting summary judgment on [their] § 1983 procedural due process claim alleging the city revoked those permits and issued stop work orders without affording due process."   But, in affirming Judge Granade, the Eleventh Circuit noted that it has held "that there is no procedural due process violation when a plaintiff fails to take advantage of adequate state law remedies available to him."   *Id.* at 430 (citing *Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir. 2000) and explaining, "Under Ala. Code § 11-52-81, the O'Neals could have appealed the denial of their appeal of the stop work order to an Alabama circuit court.   The O'Neals took no such appeal.   Having failed to take advantage of the state law remedy available to them, the O'Neals cannot now complain that they were denied procedural due process.")[10]; *see also Mickens v. Tenth Judicial Circuit*, 181 Fed. App'x 865, 877 (11th

---

[10]        That provision of the Code provides,

> Any party aggrieved by any final judgment or decision of such board of zoning adjustment may within 15 days thereafter appeal therefrom to the circuit court by filing with such board a written notice of appeal specifying the judgment or decision from which the appeal is taken.   In case of such appeal such board shall cause a transcript of the proceedings in the action to be certified to the court to which the appeal is taken, and the action in such court shall be tried *de novo*.

ALA. CODE § 11-52-81 (1975).

And it should be noted that this Court has also questioned whether that provision fully satisfies the requirements of *McKinney, see supra* at 18-19.   In *Amazing Grace Bed & Breakfast v. Blackmun*, Civil Action No. 09–0298–WS–N, 2009 WL 4730729 (S.D. Ala. Nov. 30, 2009), Judge

Cir. May 22, 2006) (per curiam) (The plaintiffs "failed to allege either a 'constitutionally-inadequate process,' or that the Polk County Defendants failed to provide adequate procedures.   Indeed, we have explained that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora-agencies, review boards, and state courts, before being subject to a claim alleging a procedural due process violation.   Thus, the Mickens failed to allege sufficiently a claim of a violation of procedural due process.") (citing *Horton v. Board of*

---

Steele denied a Rule 12(b)(6) motion as to a procedural due process violation where the defendants argued that the plaintiffs had "an adequate state judicial remedy[,]" *id.* at *3, because the Court was not satisfied that § 11-52-81 provides an ***adequate*** state remedy:

> State law provides the plaintiffs the right to appeal the Board's decision to state court.   ALA. CODE § 11–52–81.   Indeed, it appears the plaintiffs have done so, although the appeal is languishing.   The question is whether the availability of this appeal satisfies *McKinney*.

> Section 11–52–81 by its terms provides judicial power to review the Board's adverse decision.   Because "the action in such court shall be tried *de novo*," *id.*, it is clear the plaintiffs can obtain in court the due process they allegedly were denied by the Board.   Less clear is whether the state court "could have fully compensated the [plaintiffs] for the property loss [they] suffered," measured "both in terms of damages and equitable relief."   *McKinney*, 20 F.3d at 1564.

> The defendants do not attempt to answer this question directly.   Instead, they argue that the Eleventh Circuit has already held that Section 11–52–81 satisfies due process.   In *O'Neal Homes, Inc. v. City of Orange Beach*, 333 Fed. App'x 428 (11th Cir. 2009), the Court concluded that the plaintiff's failure to appeal, through Section 11–52–81, the revocation of building permits and issuance of stop work orders, precluded it from maintaining a procedural due process claim.   *Id.* at 430.   The Court did not address whether courts hearing appeals under Section 11–52–81 can fully compensate plaintiffs for their property loss.   Indeed, the Court did not address the *McKinney* elements at all; instead, the Court cited generally to *Cotton v. Jackson*, 216 F.3d 1328, 1330–31 (11th Cir. 2000), a case that cited *McKinney* but omitted its requirement of a process providing compensation for the property loss.   Because *O'Neal Homes* is unpublished, it is not binding precedent but at most persuasive.   Eleventh Circuit Rule 36–2.   Because it lacks an explanation how it comports with *McKinney*, the Court does not consider *O'Neal Homes* sufficiently persuasive to alone carry the day.

*Id.*

*County Comm'rs of Flagler County*, 202 F.3d 1297, 1300 (11th Cir. 2000)); *Romero*, 2009 WL 1361714, at *8 (dismissing Procedural Due Process claim because, despite complaint's allegation to the contrary, post-deprivation remedies were available and plaintiff "failed to recognize the availability of these remedies at all").

Count VIII of the amended complaint is KTK's "appeal" of the Selma City Council's September 25, 2012 decision.  (*See* Doc. 28, ¶ 49.)  Under that count, KTK avers that

> [t]he minutes of the September 25, 2012, City Council meeting show that the suspension/revocation of the building permit was intended to be a final action of the City Council "until a Court ruling has been made as it relates to the use/ownership of the [Confederate Circle] property." Therefore, KTK has been left with no administrative remedy and the City has deferred to judicial action to resolve this controversy.   Accordingly, it should now be estopped from complaining that KTK has failed to exhaust any administrative remedies with regard to the unlawful and unauthorized suspension/revocation of the validly issued building permit.

(*Id.*, ¶ 49(H).)

In moving to dismiss this count—as well as the procedural due process part of Count I—the City argues, "Plaintiffs have not alleged that they sought any appeal to the City Council or Board of Adjustment of Code Appeal, only that they filed this action instead.   Accordingly, they have not established that they were deprived of a right and the State refused to apply a procedure to remedy the alleged procedural deprivation." (Doc. 30 at 10-11; *see also id.* at 16-17 ("Plaintiffs allege that the City is estopped from insisting that the Plaintiffs exhaust their administrative appeals regarding the suspension/revocation of the permit.  Plaintiffs have failed to state, however, that seeking proper administrative appeal procedures and relief would be futile or that

immediate relief is warranted, only that the City has 'deferred to judicial action.'   The City Council voted to suspend the permit on September 25, 2012.   Plaintiffs filed this lawsuit on October 17, 2012.   Plaintiffs have not appealed to the Council or the City of Selma Board of Adjustment of Code Appeals, which was created to hear all appeals of the various technical codes of the City of Selma.   Having failed to exhaust these remedies, Plaintiffs are not entitled to a determination by a court of law regarding the suspension of the building permit.") (citing *City of Gadsden v. Entrekin*, 387 So. 2d 829, 833-34 (Ala. 1980) (record citations omitted).)

In *Entrekin*, the Alabama Supreme Court was "led to the inescapable conclusion that one must exhaust his remedies in a zoning matter before entering a court of law"; however, "that rule is not absolute and without exceptions."   387 So. 2d at 833.   The four exceptions identified were: (1) "the question raised is one of interpretation of the statute"; (2) "the action raises questions of law only and not matters requiring administrative findings of fact or an exercise of administrative discretion"; (3) exhaustion "would be futile or [ ] the remedies provided [ ] inadequate"; and (4) "when irreparable injury is threatened."   *Id.*[11]

---

[11]     There, none of "these possible exceptions exist[ed] . . . .

Appellee proceeded to trial alleging that she was wrongfully denied a building permit by the City of Gadsden.   That decision was clearly a matter of administrative discretion.   If she wished to contest that denial, she should have filed an appeal to the Housing and Building Board of Adjustments and Appeals, allowing that board to hear evidence and reach a factual determination on the issue.   If that board reached an adverse decision, she could have then appealed to the Circuit Court of Etowah County pursuant to Code 1975, s 11-52-8[1]. Having failed to exhaust these remedies, she was not entitled to enter a court of law.

*Id.* at 833-34.

Here, the City has not shown that failure to exhaust administrative remedies requires dismissal of either the procedural due process aspect of Count I or Count VIII. First, the City has now shown that appealing a decision of the Selma City Council to "the Council [itself] or the City of Selma Board of Adjustment of Code Appeals" is required or not futile.

Other than stating, generally, that the Board of Adjustment of Code Appeals (the "Board") "was created to hear all appeals of the various technical codes of the City of Selma[,]" the City has failed to tell the Court anything about the Board.   However, the Court can take notice that the website for the Board provides that it was "created . . . to hear all appeals under the various tecnical [sic] codes of the city and under such other ordinances as the council shall specify."[12]   And although the City has failed to explain this to the Court, it appears that the Board was created pursuant to Ala. Code § 11-52-80, which provides that,

> [i]n availing itself of the powers conferred by this article, the legislative body of any incorporated city or town may provide for the appointment of a board of adjustment and, in the regulations and restrictions adopted pursuant to the authority of this article, may provide that the said board of adjustment shall in appropriate cases and subject to appropriate conditions and safeguards make special exceptions to the terms of the ordinance in harmony with its general purposes and interests and in accordance with general or specific rules therein contained.

*Id.*, § 11-52-80(a).

Further, important for present purposes, the Alabama Code provides that appeals to the Board "may be taken by any person aggrieved or by any officer,

---

[12]      *See* Selma, Alabama, Boards and Commissions, Board of Appeals, *available at* http://www.selma-al.gov/boards/board_of_appeals.html (last visited May 29, 2013).

department, board, or bureau of the municipality affected by any decision of the administrative officer.

> Such appeal shall be taken within a reasonable time, as provided by the rules of the board, by filing with the officer from whom the appeal is taken and with the board of adjustment a notice of appeal specifying the grounds thereof.   The officer from whom the appeal is taken shall transmit forthwith to the board all papers constituting the record upon which the action appealed was taken.   An appeal stays all proceedings in furtherance of the action appealed from unless the officer from whom the appeal is taken certifies to the board of adjustment after the notice of appeal shall have been filed with him that by reason of facts stated in the certificate a stay would in his opinion cause imminent peril to life or property.   Such proceedings shall not be stayed otherwise than by a restraining order which may be granted by the board of adjustment or by a court of record on application on notice to the officer from whom the appeal is taken and on due cause shown.   The board of adjustment shall fix a reasonable time for the hearing of the appeal, give public notice thereof, as well as due notice to the parties in interest, and decide the same within a reasonable time.   Upon the hearing any party may appear in person or by agent or by attorney.

*Id.*, § 11-52-80(c).

If the City had revoked/suspended KTK's building permit through an "administrative officer" working for the City (presumably an "administrative officer" in, for example, the Department of the Building Inspector—the office that allegedly issued KTK's building permit (*see* Doc. 28, ¶ 10)), § 11-52-80 would clearly apply, and the proper course would have been for KTK to appeal to the Board.   If KTK was not satisfied with the Board's decision, § 11-52-81 clearly provides for review in state circuit court.   And this Court would honor the Eleventh Circuit's mandate that "Federal courts should not sit as zoning boards of appeal."   *Mackenzie*, 920 F.2d at 1558.

Revocation/suspension in that manner is not, however, what KTK alleges occurred in this case.   Instead, the City Council took action directly.   And, as the

24

Alabama Supreme Court observed in *Ex parte City of Huntsville*, 684 So. 2d 123 (Ala. 1996), "[a] zoning board acts independently of the municipal council that enacts the ordinances[.]"   *Id.* at 126.[13]   Thus, the City's argument that KTK could have had the Selma City Council's decision reviewed by the Board makes little sense.   Or, more importantly for purposes of the motion to dismiss, especially since the City has failed to provide any authority to the contrary, it is not implausible that the Board could not have reviewed the Selma City Council's September 25, 2012 decision regarding KTK's building permit.

Accordingly, because the City has not shown that KTK was required to exhaust administrative and/or other state remedies, should any exist, before filing this lawsuit, it is **RECOMMENDED** that the Court **DENY** the City's motion with respect to the Fourteenth Amendment Procedural Due Process claim contained in Count I and with respect to Count VIII.

### F.      Conversion (Count IV).

In its claim for conversion, KTK alleges that the City "exert[ed] dominion and control over all work, including materials, equipment and tools, that had been done by KTK in performance of its construction contract without allowing KTK to enter and

---

[13]      There, the Court held that an Alabama municipality has standing to seek judicial review of decisions of zoning boards pursuant to § 11-52-81, agreeing with the logic of an Illinois appellate court,

> "[I]f it did not have such a remedy, the decision of the board of appeals would be final and binding, and [the City] would be compelled to issue a permit for the construction.   A rule that would preclude the municipality from seeking judicial review would, in effect, grant to zoning boards unbridled power not reviewable in any court except in situations where private citizens suffer injury different from that suffered by the general public."

*Id.* (quoting *Reichard v. Zoning Bd. of Apps. of Park Ridge*, 290 N.E.2d 349, 353 (Ill. App. Ct. 1972)).

complete the work and without compensating KTK for work and labor done and expenses incurred in the performance of [its] contracts." (Doc. 28, ¶ 34.)

"To establish conversion, a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." *Birmingham-Jefferson County Transit Auth. v. Arvan*, 669 So. 2d 825, 828 (Ala. 1995) (citing *Huntsville Golf Dev., Inc. v. Ratcliff, Inc.*, 646 So. 2d 1334 (Ala. 1994)). And, as the City points out, it is an established "rule" in Alabama that "conversion will not lie for the taking of real property." *Faith, Hope & Love, Inc. v. First Ala. Bank of Talladega County, N.A.*, 496 So. 2d 708, 711 (Ala. 1986) ("reaffirm[ing]" *Hatfield v. Spears*, 380 So. 2d 262 (Ala. 1980)).

Thus, to the extent that KTK is alleging that the City converted KTK's "work . . . done . . . in performance of its construction contract[s,]" which, put differently, would be the improvements KTK was able to make to the Circle prior to the work stoppage, KTK cannot state a claim for conversion of such "work" (or its improvements to the Circle) because its personal property was converted to real property status when incorporated into improvements to the Circle. *See id.* ("[C]onversion will not lie for the taking of real property."). But, to the extent KTK is alleging that the City converted KTK's "equipment and tools"—items not incorporated into improvements to the Circle and, thus, converted to real property—that claim can go forward.

Accordingly, it is **RECOMMENDED** that the Court **GRANT** the City's request to dismiss Count IV to the extent it states a claim for conversion of real property.

### G.    Negligence (Count V).

KTK asserts that the City Council acted negligently when it voted to suspend/revoke KTK's building permit on September 25, 2012.   (Doc. 28, ¶ 37.)

The undersigned begins the examination of this claim by pointing out that "the Alabama Code contains a provision, limiting municipal liability to some extent.

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefore and while acting in the line of his or her duty[.]

*O'Neal Homes, Inc. v. City of Orange Beach*, Civil Action No. 06-0881-CG-B, 2008 WL 2163919, at *18 (S.D. Ala. May 14, 2008) (Granade, J.) (quoting ALA. CODE § 11-47-190 (1975)), *aff'd*, 333 Fed. App'x 428, 430 (11th Cir. May 29, 2009) (per curiam).

The negligence claim in *O'Neal* was that "Defendants' negligent, reckless or wilfull [sic] failure to draft [an] Amendment as intended by the City Council has acted to breach Defendant's [sic] duty to provide honest government to O'Neal and its citizenry which, has caused Plaintiffs substantial hardship and damage."  *Id.* at *17 (quoting complaint).)    And, in that case, this Court focused on the so-called "substantive immunity" doctrine:

> In order to prevail on a claim for negligence, "the plaintiff must prove (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury."  *DiBiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008).   The existence of a duty is a question for the court to decide. Id.

> The Supreme Court of Alabama adopted the doctrine of substantive immunity in *Rich v. City of Mobile*, 410 So. 2d 385 (1982).   After a sewer back-up that overflowed into the plaintiffs' home in that case, the plaintiffs sued the city for negligent failure to inspect or negligent

inspection of sewer lines near the plaintiffs' home.   *Id.* at 385.   The court characterized the claim as follows:

> Stated simply, Plaintiffs would have this Court hold: 1) the duty imposed upon the City plumbing inspectors is one which is owed, not to the public generally (as is the case of a public official), but to individual homeowners; and, 2) the breach of such duty will support the homeowner's action for resultant damages.   This we cannot do[.]

*Id.*   After reviewing cases from other jurisdictions addressing the topic, the court decided that, although an individual homeowner, like the plaintiff, could be affected by the negligence of a city sewer inspector, the city's "larger obligation to the whole of its resident population is paramount" and imposing liability on the city for the plaintiffs' individual loss would improperly threaten "the benefits of such services to the public-at-large."   *Id.* at 387.   It summarized:

> We believe these public policy considerations . . . override the general rule [that a city is liable for the negligence of its employees under Ala. Code § 11-47-190 (1975)] and prevent the imposition of a legal duty, the breach of which imposes liability, in those narrow areas of governmental activities essential to the wellbeing of the governed, where the imposition of liability can be reasonably calculated to materially thwart the City's legitimate efforts to provide such public services.

*Id.*   The court called its public policy decision to find that the city does not owe individuals a legal duty in tort under certain circumstances "the substantive immunity rule of this case."   *Id.*   The rule, the court held, should be narrowly construed and *"given operative effect only in the context of those public service activities of governmental entities . . . so laden with the public interest as to outweigh the incidental duty to individual citizens."*   *Id.* at 387-88.

Relying on *Rich*, the Supreme Court of Alabama invoked the doctrine again, and further explained it, in *Hilliard v. City of Huntsville*, 585 So. 2d 889 (Ala. 1991).   In *Hilliard*, a municipality negligently inspected the wiring in an apartment complex, leading to an electrical fire that killed the plaintiff's wife and children.   *Id.* at 889-90.   The Alabama Supreme Court affirmed judgment on the pleadings in favor of the municipality.

The court explained that a municipality must breach a legal duty before it can be liable for negligence.   *Id.* at 890.   The initial focus is on the nature of the duty—it must stem from the common law or a statute.   *Id.* Although municipalities are no longer necessarily immune from suit

when they negligently perform a governmental function, *id.*, *Rich* provides that a municipality is not liable to an individual when it breaches a duty it owes to the public in general. *Id.* at 891. This is true even if, by breaching its duty to the public, it breaches an incidental duty to an individual member of the public. *Id.* The Hilliard court also refers to this absence of a legal duty as "substantive immunity."

If a municipality's duty to the public to perform electrical inspections outweighs the incidental duty the municipality owes to the individuals who live in the apartment complexes it inspects, then the duty a municipality owes to the public to draft properly zoning ordinances outweighs any similar incidental duty a municipality may owe to individual members of the public. Call it "substantive immunity" or call it "the absence of a legal duty owed to individuals," the duty to draft ordinances with care and to provide "honest government" is owed to the public. Assuming that there is an incidental duty to individual citizens, the activity of passing legislation is at least as "laden with the public interest" as the duty to inspect wiring was in *Hilliard*, that it outweighs any "incidental duty to individual citizens" such as the plaintiffs. *But cf., City of Mobile, Ala. v. Sullivan*, 667 So. 2d 122 (Ala. Civ. App. 1995) (Plaintiffs alleged that city employees negligently represented that property was zoned for a certain commercial use, inducing the plaintiffs to purchase the property. Substantive immunity did not apply because the city created a duty to the plaintiffs when the city, among other things, provided written verification to the plaintiffs that property was zoned a certain way. The court "strictly narrow[ed] this holding to this case. Nothing in this opinion should be construed to indicate that this exact result would occur in a similar, but not identical, situation." *Id.* at 127-128.).

*Id.* at *18-19 (initial citation modified and emphasis added).

As provided in *Rich*, a court should be cautious before finding "substantive immunity"—or finding that a municipality does not owe a legal duty to individuals. And the rule should be applied "only in the context of those public service activities of government entities . . . so laden with the public interest as to outweigh the incidental duty to individual citizens." *Id.* at 387-88; *see also Dyas v. City of Fairhope*, Civil Action No. 08–0232–WS–N, 2010 WL 5158381, at *13 (S.D. Ala. Dec. 14, 2010) (Steele, J.) ("There

is no clear dividing line, and the rule 'evolve[s] through the judicial process of trial and review on a case by case basis.'") (quoting *Rich*, 410 So. 2d 387).

Like in *O'Neal*, the duty at issue here: to vote with regard to building permits with care and also, in essence,

> to provide 'honest government' is owed to the public.  Assuming that there is an incidental duty to individual citizens, the activity of [voting, like] passing legislation[,] is at least as "laden with the public interest" as the duty to inspect wiring was in *Hilliard*, that it outweighs any "incidental duty to individual citizens" such as the plaintiffs.

2008 WL 2163919, at *19; *compare Payne v. Shelby County Comm'n*, 12 So. 3d 71, 80-81 (Ala. Civ. App. 2008) ("The acts taken by the County Commission and the Planning Commission to enforce the conditional rezoning resolution at issue in this case are also protected by substantive immunity.   A governmental entity's decision regarding how a zoning ordinance should be enforced is as much a legislative matter as is the enactment of a zoning ordinance. . . . Just as we have located no Alabama case holding that a governmental entity may be held liable in tort for its actions in adopting a zoning ordinance, we have located no Alabama case holding that a governmental entity may be held liable in tort for its failure to enforce local ordinances against third parties. . . . Based on the foregoing, we conclude that the County Commission and the Planning Commission were entitled to substantive immunity as to the exercise of their zoning powers. Therefore, the County Commission and the Planning Commission owed no duty to the Paynes as a result of the adoption of the conditional rezoning resolution or as a result of the County Commission's and Planning Commission's decisions as to how best to enforce that resolution against Burch.") (citations omitted), *with Dyas*, 2010 WL 5158381, at *13 (declining to extend substantive immunity to the traffic context where

"the City ha[d] entered a contract with a citizen for a particular traffic resolution")
(citing, *inter alia*, *City of Mobile v. Jackson*, 474 So. 2d 644, 649 (Ala. 1985) (in which the
Supreme Court "denied substantive immunity on the grounds that '[w]e find that the
liability for negligent design or maintenance of drainage systems is analogous to that
involved in the construction and maintenance of streets, alleys or public ways . . . and,
thus, that the city is not immune in this case'")).

Accordingly, because KTK has not established that the City (or its City Council)
owed it a duty when voting with regard to KTK's building permit on September 25,
2012, KTK cannot maintain a claim of negligence, and the undersigned
**RECOMMENDS** that the Court **GRANT** the City's request to **DISMISS** Count V.

### H.     Injunctive Relief (Count VII).

Finally, KTK contends that "preliminary temporary and injunctive relief is
necessary in order to enable KTK to perform its contracts and to enjoin the defendants
separately and severally from interfering with KTK in the performance of its
contracts[.]"    (Doc. 28 at 11.)

For guidance as to this count, the undersigned turns to *Alabama v. U.S. Army
Corps of Engineers*, 424 F.3d 1117 (11th Cir. 2005), in which the Eleventh Circuit set forth
the following analytical framework:

> [A]ny motion or suit for either a preliminary or permanent injunction
> must be based upon a cause of action, such as a constitutional violation, a
> trespass, or a nuisance.   "There is no such thing as a suit for a traditional
> injunction in the abstract. For a traditional injunction to be even
> theoretically available, a plaintiff must be able to articulate a basis for
> relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure
> to state a claim)."   *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097
> (11th Cir. 2004).   An injunction is a "remedy potentially available only
> after a plaintiff can make a showing that some independent legal right is

31

being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." *Id.* at 1098. However, because it is an extraordinary remedy, it is available not simply when the legal right asserted has been infringed, but only when that legal right has been infringed by an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 (1959); *see also Newman v. Alabama*, 683 F.2d 1312, 1319 (11th Cir. 1982). Thus, to obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief. *Newman*, 683 F.2d at 1319 (relying on *Rizzo v. Goode*, 423 U.S. 362, 377 (1976), and *Beacon Theatres*, 359 U.S. at 506).

*Id.* at 1127-28 (citations modified); accord

Because the undersigned has determined that KTK's First Amendment and Fourteenth Amendment Procedural Due Process claims are not implausible and, as such, has recommended that they not be dismissed pursuant to Rule 12(b)(6), it follows that KTK's claim for permanent injunction should be allowed to proceed at this time. But since KTK has also requested preliminary relief during the pendency of this litigation, the undersigned turns to the next passage from *Alabama v. U.S. Army Corps of Engineers*—

It has been recognized[ ] that if a court does not act until a trial on the merits of the cause of action, the party seeking relief might be irreparably harmed in the meantime. Moreover, the judicial process can be rendered futile by a defendant's action or refusal to act during the pendency of the suit. Thus, in order to protect a party "from irreparable harm and to preserve the court's power to render a meaningful decision after a trial on the merits" a preliminary injunction can issue even though the right to permanent relief is still uncertain. 11A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2947. However, in issuing such an order before the entire case has been fully and fairly heard, great care must be taken to assure that the power of a court to require or deter action does not result in unwarranted harm to the defendant or the public. *See id.*

32

> Accordingly, a district court may grant preliminary injunctive relief when the moving party shows that: (1) it has a substantial likelihood of success on the merits of the underlying case when the case is ultimately tried; (2) irreparable injury during the pendency of the suit will be suffered unless the injunction issues immediately; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.   *Klay*, 376 F.3d at 1097 (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam)).

*Id.* at 1128; *cf. Republic of Philippines v. Marcos*, 818 F.2d 1473, 1490 (9th Cir. 1987) (Hall, J., concurring in part and dissenting in part) ("The test of whether to grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is inapplicable to the question of whether a plaintiff has made a sufficient showing of subject matter jurisdiction to obtain a preliminary injunction.  At the preliminary injunction stage, a more stringent test applies.").

KTK has failed to make the requisite showing pursuant to *Klay*.   Therefore, the undersigned cannot say it is entitled to a preliminary injunction.

Accordingly, it is **RECOMMENDED** that, with respect to Count VII, KTK only be allowed to proceed on its request for permanent injunction.

### III.    Conclusion

For the reasons discussed above, the undersigned **RECOMMENDS** that the only aspects of this case that should proceed are KTK's claims against the City of Selma for (1) violation of the First Amendment (Count I); (2) violation of the right to procedural due process protected by the Fourteenth Amendment (Count I); (3) conversion of personal property (Count IV); (4) a permanent injunction (Count VII); and (5) subsumed in its claimed procedural due process violation, an appeal to this Court for review of the

Selma City Council's September 25, 2012 decision to suspend/revoke KTK's building permit.

Accordingly, it is **RECOMMENDED** that

1.   Plaintiff Todd Kiscaden lacks standing and, as such, any claims he asserts should be **DISMISSED WITH PREJUDICE**;

2.   All claims against Defendant William T. Riley should be **DISMISSED WITH PREJUDICE**;

3.   As to Count I, the Fifth Amendment claim and the Fourteenth Amendment Substantive Due Process claim should be **DISMISSED WITH PREJUDICE**;

4.   Counts II and III, for tortious interference, should be **DISMISSED WITH PREJUDICE** in their entirety;

5.   As to Count IV, for conversion, any claim that real property was converted should be **DISMISSED WITH PREJUDICE**;

6.   Count V, for negligence and wantonness, should be **DISMISSED WITH PREJUDICE** in its entirety;

7.   Count VI, for fraud, should be **DISMISSED WITH PREJUDICE** in its entirety; and

8.   As to Count VII, for injunctive relief, any request for a preliminary injunction should be **DENIED** (that aspect of the count should be **DISMISSED WITH PREJUDICE**).

In all other respects, the motion should be **DENIED**.

## IV.   Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.   *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.   In order to be specific, an objection must identify the specific

34

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.   An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

  **DONE** this the 10th day of June, 2013.

          s/WILLIAM E. CASSADY
          **UNITED STATES MAGISTRATE JUDGE**